## McGOWAN *v.* AMERICAN PRESSED TAN BARK COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Argued March 25, 28, 1887. — Decided May 2, 1887.

In this case, the question being whether a contract was made by the defendants as copartners, or for a corporation, it was held that the instructions to the jury on the subject were proper.

Where, by a contract, the defendants were to erect machinery on a steamboat in 60 days from the date of the contract, and the plaintiff did not furnish the steamboat until after the expiration of the 60 days, and the defendants then went on to do the work, they were bound to do it in 60 days from the time the boat was finished.

A supplemental contract between the parties construed, as to its bearing on the original contract sued on.

A counterclaim or recoupment must be set up in the answer, to be available.

An objection to the competency of an expert witness to testify, overruled.

THIS was an action at law to recover damages for non-performance of a contract. Verdict for the plaintiff and judgment on the verdict. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. George Hoadly* and *Mr. T. D. Lincoln* for plaintiffs in error.

*Mr. Edgar M. Johnson, Mr. Edward Colston, Mr. George Hoadly, Jr., Mr. C. H. Stephens* and *Mr. J. L. Lincoln* were also on the briefs.

*Mr. Thomas McDougall* and *Mr. E. W. Kittredge* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought in the Circuit Court of the United States for the Southern District of Ohio, by the American Pressed Tan Bark Company, a New Jersey corporation, against Theodore J. McGowan and Robert C. Bliss, partners under the firm name of " The McGowan Pump Company," doing business at Cincinnati, Ohio, to recover damages for the alleged breach by the defendants of a contract for the construction and erection of machinery upon a steamboat. The petition by which the action was commenced sets forth a contract entered into on the 23d of June, 1881. After a trial before a jury, which occupied thirty days, there was a verdict for the plaintiff for $18,000, and a judgment accordingly, to review which the defendants have brought a writ of error.

The petition alleges that the plaintiff, being the owner of patents for the manufacture and sale of pressed tan bark, entered into a contract with one Mack, of Cincinnati, for the construction of a steamboat which was to receive, carry and operate machinery to be erected on it by the defendants under the contract sued upon, and was to be constructed, by agreement with the defendants, under their control and supervision, and to their acceptance; and that the boat was so constructed by Mack and was accepted by the defendants. The contract

between the plaintiff and Mack for the construction of the boat was in writing, and was made on the 17th of June, 1881. It contained the particulars as to the size and material and mode of construction of the boat, and stated that its construction and acceptance, on the part of the plaintiff, was left with "Theo. J. McGowan & Bliss," and that it was to be finished and delivered, afloat, to the plaintiff, on or before August 26, 1881. The petition alleges that this contract with Mack was made with full knowledge on the part of the defendants of the purpose for which the boat was being constructed, and with their direction, counsel and advice.

The written papers constituting the contract between the plaintiff and the defendants were as follows: On the 23d of April, 1881, the defendants, using the signature "Theo. J. McGowan & Bliss," wrote from Cincinnati to A. G. Darwin, the president of the plaintiff, the following letter:

"CIN'TI, O., *April* 23, 1881.

"A. G. Darwin:

"DEAR SIR: We herewith submit plan for bark press, two views, one plan and the other elevation. They were gotten up in great haste and are not as full as they should be, but they show what our ideas are. The operation is 2 12 hyd. presses, E E, one on each side of 20″ hyd. press D, to remove the bark from containing cyl. G, alternately, after being pressed in 20″ hyd. press D. They pass from the hyd. press E to hyd. press D, by a track, and are filled at top end from floor above, and the bale is also delivered from top end of containing cyl. on to the floor from which cylinders are filled. F is a chamber 40″ in diameter and 12 feet high, and is supplied with water and air by steam pump A, which keeps up a pressure in F to 300 lbs., to operate the hyd. presses rapid at beginning of the operation, and, when the hyd. pumps B and C have raised the pressure in hyd. press beyond 300 lbs., the check-valves close, and shut off connection between hyd. presses and pressure chamber. Then the hyd. pumps B and C complete the pressure until bale is pressed in 20″ press and bale removed from containing cyl. The hyd. pump C is used exclusively for

20″ hyd. press, and hyd. pump B is used for the two 12″ presses E E. The hyd. pumps are independent of each other, and each has its own steam cyl. The steam pumps use the water over again from tank from which it has been delivered from hyd. presses. The operation is about as follows: The containing cyl. is filled from upper floor, is run under 20″ press and pressed up to desired pressure; it is then run on track to 12″ press, where it is forced from containing cyl., which is again filled and operation repeated, and, while cyl. is being emptied the other is going through 20″ press, and so on; work is done very rapidly and well. 20″ press can be used up to 1500 tons pressure.

"Trusting this hurried explanation is satisfactory and that we may have your favors,

"Yours, &c.,

"THEO. J. McGOWAN & BLISS.

"P. S. — Time required for each pressing and delivery of bale 2½ minutes. We guarantee the whole."

On the 20th of May, 1881, the following letter, signed "The McGowan Pump Co.," was written to Darwin:

"CINCINNATI, O., *May* 20, 1881.

"A. G. D., Chicago:

"Yours 18th to hand, and contents noted. By enlarging press, as per your suggestion (which we think very good), we are of opinion that we have large surplus power in presses, and almost agree with you in your ideas as to amount, but we are inexperienced with the nature of tan bark to press into a cylinder and remove therefrom, and have been governed entirely by the calculations given us by Mr. Hill, and we think there will have to be some little experimenting before you can accomplish just what you want. We do not know how much compression there will be to make bale and weight required, nor how bulky the bark will be, when loose, to make bale of required size. We do know the motions can be made in 2½ minutes and the pressure 1500 tons given, but what kind of

bale it will be we do not know. We are constructing this machinery to make these bales 14″ x 16″, and not much clearance. We think it would be advisable to have more clearance made, by extending columns further out, to permit a large bale being made, by enlarging cylinder, as you suggest. This would necessarily make the press cost more money. The bars would have to be extended further out and the castings made heavier to resist pressure. If you come to the conclusion to have enlargement made, notify us at the earliest moment possible. We have now got scale drawings about complete, and, when the boat is procured, or other selection made for erection, we will have to add to our plan the supports for the support of presses to foundations. It will materially change our plans if changed from boat to land, as presses are very long, and on a shallow boat would throw them above main deck. Will be glad to see you.

"THE McGOWAN PUMP CO."

On the 23d of June, 1881, the following written contract was executed:

"CINCINNATI, O., *June* 23, 1881.
"The Am'r. Pressed Tan Bark Co., of 240 Broadway, N. Y.

"GENTLEMEN: We hereby propose to furnish you the following machinery:

"1. 14″ x 24″ engine and all necessary trimmings for grinding bark.

"2. 14″ x 28″ engine and all necessary trimmings for propelling boat.

"3. 3 boilers, 42″ x 26″, and all necessary trimmings for propelling boat.

"3 bark mills and all necessary trimmings and gearing.

"1 bark elevator; 2 elevators with platforms, for raising and lowering pressed bark to and from hold of boats, to be provided with safety catches and unwinding device; 3 heaters —
1 for bark engines, 1 for boat engines, and 1 for steam-pumps; 1 steam-pump for boiler feed; 1 deck hand-pump; 250 feet of rubber hose, couplings, and 3 nozzles; 2 hoppers and scales to

weigh bark; all the necessary shafting, hangers, pulleys, beltings, and all steam and escape pipes; also one 20″ hyd. press and two 12″ hyd. presses, with their necessary fixtures and connections, together with the necessary hyd. steam-pumps, tank, &c., for pressing bark into bales; all to be done in a workmanlike manner and of first-class material, and set up aboard your boat in Cincinnati, Ohio, for the sum of twenty-three thousand seven hundred ($23,700.00) dollars; the above machinery to have a sufficient capacity to do the required work, and guaranteed to pass government inspection.

"THE McGOWAN PUMP Co.

"To be completed in 60 days.

"We accept the above.

"Accepted June 23, 1881.

"AM'R. TAN BARK Co.,
"By S. H. BEACH, Att'y."

On the 30th of June, 1881, the following letter was written by Darwin to "The McGowan Pump Co.:"

"NEW YORK, *June* 30, 1881.
"To the McGowan Pump Co., Cin'ti, Ohio.

"Mr. S. H. Beach hands us contract for presses, engines, boilers, &c., &c., entirely satisfactory, as we understand — that is, that the capacity of the presses, &c., are in keeping with guarantee expressed in your letter of April 23, 1881, which we consider a part of your contract, in so far as guarantee of the presses are concerned. Please give us formal acknowledgment of same.

"Yours respectfully,        A. G. DARWIN,
"Pres't A. P. T. B. Co."

On the 5th of July, 1881, the following letter was written by "The McGowan Pump Co." to Darwin:

"CINCINNATI, OHIO, *July* 5, 1881.
"A. G. Darwin, N. Y.

"DEAR SIR: Your favor of June 30th to hand and noted. Our contract is in accord with ours of April 23. Of course

we do not know nor could we guarantee anything in reference to whether the bark will bale or not, or weight or size of bale. That we consider an experiment, and can only be demonstrated by test.

     "Yours respectfully,     THE McGowan PUMP Co."

At the trial, the plaintiff offered evidence, in connection with the contract with Mack, tending to prove that that contract was drawn up in the office of the defendants, and read over by the parties before it was signed, in the presence of the defendants, and was left in their safe until some time in November, 1881, when the boat was launched by Mack; and evidence tending to show that the defendants agreed to superintend the erection and construction of the boat, and took upon themselves the supervision and control of the same, and undertook to accept the same, for the plaintiff; that the boat was constructed for the purpose of receiving and operating the machinery of the defendants, according to plans of construction discussed between the agents of the plaintiff, and Mack, and the defendants, and approved by the defendants; and that the defendants did superintend the construction of the boat and accept the same.

The petition alleges, that the contract of the 23d of June, 1881, was a contract whereby the defendants agreed and guaranteed to construct, erect, complete and have in operation on board of the boat, within sixty days from the date of the contract, the machinery specified in it, for the purpose of pressing tan bark under the patented process, and according to plans, specifications and details furnished by the defendants; and that the defendants guaranteed that all of the machinery should be done in a workmanlike manner and of first-class material, and set up on board of the boat at Cincinnati; and that all of said machinery should have sufficient capacity to do, and would do, the required work, and would pass government inspection, and that the hydraulic machinery would sustain and work up to a pressure of 1500 tons, and that the time necessary for pressing and delivering each bale of bark would be two and one half minutes.

The breach alleged in the petition is, that the defendants have failed to construct, erect and complete the machinery according to the contract, and have failed to erect and complete it within the time set forth in the contract; that the machinery constructed and erected on board of the boat by the defendants is of insufficient and inferior material, is inferior and defective in character and quality of workmanship and fails to do the work required by the contract; and that the hydraulic machinery constructed will not give, sustain or work up to the 1500 tons pressure as guaranteed by the defendants, and is defective in workmanship and unsafe. The petition further alleges, that the plaintiff has wholly performed on its part the contract of the 23d of June, 1881, and paid to the defendants, on account of the $23,700 to be paid thereby, the following sums, at the following dates: November 5, 1881, $4500; November 26, 1881, $2500; January 24, 1882, $3000; February 28, 1882, $2500; and March 30, 1882, $4000; making a total of $16,500.

The defendants put in an answer, denying generally the averments of the petition, on which the case went to trial. On the third day of the trial, by leave of the court, the defendants filed an amendment to their answer, in the following language:

"Second defence. These defendants, protesting that the contract dated June 23, 1881, described in the petition, was not made with them, but with the McGowan Pump Company, a corporation of Ohio, say, that if it shall appear, upon the trial of this cause, that the contract was made with them as partners, under the name of the McGowan Pump Company, and not with said corporation, then they say that said contract, as made June 23, 1881, did not provide, as a part of said contract, that the hydraulic machinery would sustain and work up to a pressure of fifteen hundred tons, or that the time necessary for pressing and delivering each bale of bark would be two and a half minutes, as alleged in said petition. The defendants say that said contract, as originally executed, contained neither of said provisions, and that, if it shall appear that, by a subsequent modification of said contract, such

provisions were added to and became a part of said contract, then they say that the same were wholly without consideration.

"Thirdly. And for a further defence in this behalf, these defendants, protesting that the contract, dated June 23, 1881, described in the petition, was made with the McGowan Pump Company, a corporation of Ohio, say, that if it shall appear, upon the trial of this cause, that it was made with them as partners, under the name of the McGowan Pump Company, then, that on and before the 30th day of March, 1882, extra work, not required by said contract, to the amount of fifteen hundred and eighty-two dollars and fifty-one cents, had been furnished to the said American Tan Bark Company, being the same extras described in the contract hereinafter copied, and that, in consideration of the transfer to the American Pressed Tan Bark Company of all the machinery embodied in the said contract of June 23, 1881, and said extras, with receipts in full for all material and machinery furnished T. G. McGowan and Bliss by other parties for steamer Tan Bark, the said contract of June 23, 1881, has been wholly released and discharged, and other terms of agreement substituted therefor, by reason of the fact, that, on the 30th day of March, 1882, a contract was executed and delivered by and between the parties to the contract of June 23, 1881, viz., the McGowan Pump Company and the American Pressed Tan Bark Company, and which contract of March 30, 1882, if it shall turn out that it was made by the defendants as a partnership, under the name of the McGowan Pump Company, was made and delivered for the benefit of the same McGowan Pump Company which executed the contract of June 23, 1881, which contract is still in full force and binding between the parties, and is in the words and figures following, to wit:

'CINCINNATI, O., *March* 30, 1882.

'In consideration of 11,200 dollars to be paid us we hereby transfer to the American Pressed Tan Bark Company of New York all the machinery embodied in our contract, and extras, with receipts in full for all material and mach'y furnished

T. J. McGowan & Bliss by other parties for steamer Tan Bark. The terms of this sale are as follows: To continue all former agreements and guaranties except time required to press bark into bales and removal from cylinders. We further agree to transfer to said Co. all special patterns made for our hyd. machinery, and also agree to transfer to said Co. our exclusive interest in the accumulator and double-end arrangement on hyd. press for bark purposes only. It is hereby agreed, that the above guaranty, covering hyd. mach'y, extends only to the strength of material only up to the fifteen hundred tons pressure. We hereby acknowledge receipt of four thousand dollars; balance to be paid on presentation of receipts, as above.

'All erasures and changes made before signing.

> 'THE McGOWAN PUMP CO.
> 'AMERICAN PRESSED TAN BARK CO.,
> 'By S. H. BEACH, Attorney.'

"And the defendants further say, that the four thousand dollars described in the petition as paid on the 30th day of March, 1882, was paid to the said McGowan Pump Company under and in pursuance of the said contract of March 30, 1882, at the date of its execution, and is the same sum therein named and receipted for, but that no further or other payments have been made under said contract, although the same has been wholly complied with by the said McGowan Pump Company.

"Fourthly. And by way of a fourth defence in this cause, the defendants, protesting that the said contract of June 23, 1881, was made by the McGowan Pump Company, a corporation of Ohio, and not with the defendants as partners under the name of the McGowan Pump Company, nevertheless, if it shall prove, upon the trial of this cause, that it was made with them in such partnership capacity, by way of further defence, say, that in the month of March, 1882, the defendants took possession of and accepted the machinery constructed upon the said steamer Tan Bark, as and for full performance of said contract, and waived any claim for further performance thereof, and have prevented the defendants from

making further performance thereof, if such were necessary, which the defendants deny, by taking the same into their exclusive custody and possession, and have made divers and sundry changes in said machinery themselves, so as to prevent and render impossible any further performance thereof, if any such were necessary under said contract, and have employed the McGowan Pump Company of Cincinnati, Ohio, being the same company which entered into the contract of June 23, 1881, described in the petition, to do work to be used in making other changes and alterations, which last-named work done by the McGowan Pump Company, and which, if said company turn out to have been a partnership, was done by the defendants as such partnership, amounts to the sums of $1384.96 and $146.50, for which an action is now pending against the said plaintiff on behalf of the said McGowan Pump Company, as aforesaid; and said defendants have removed said steamer Tan Bark, and all said machinery so altered, from the jurisdiction of this court and into the state of Tennessee, where the same now is, and have appropriated the same to their own use."

The plaintiff put in a reply to this amended answer. In regard to the second defence, the reply denies that the provisions of the contract, that the hydraulic machinery would sustain and work up to a pressure of 1500 tons, or that the time necessary for pressing and delivering each bale of bark would be two and a half minutes, were without consideration, and denies the other allegations of the second defence. As to the third defence, it alleges that the instrument of the 30th of March, 1882, was executed by it on the faith of representations made to it by the defendants that they had operated and tested the hydraulic machinery up to a pressure of 1000 tons, and that the bales of bark pressed by them on the trial of the machinery made by them on the 27th of March, 1882, had received a pressure of 1000 tons therefrom, and that the machinery as so constructed had been operated by the defendants under said pressure of 1000 tons; that those representations were untrue; that, had the plaintiff known that fact, it would not have executed the instrument; that, on discovering

the untruth of the representations, it immediately notified the defendants that the agreement set forth in the instrument was null and void; that the same was thereupon abandoned by the parties thereto; and that the hydraulic machinery never has worked, and never will work, up to a pressure of 1500 tons, and wholly fails to comply with the agreements and guarantees made by the defendants. It denies the other allegations of the third defence. As to the fourth defence, it avers that, after the defendants refused to do any further work on the machinery, it made, at heavy expense, alterations in it to make it operative.

The bill of exceptions states, that the plaintiff gave evidence "tending to prove that the defendants were partners under, and signed, the name of T. J. McGowan & Bliss and the McGowan Pump Company, and tending to show that, at the time the contract of June 23 was signed, the defendants, upon being asked the reason for using the name of the McGowan Pump Company, said it was to retain the old name;" also, that the plaintiff gave evidence "tending to show defendants had negotiated with plaintiff as a firm, under the name of the McGowan Pump Company, prior to June 23, 1881, and that the defendants contracted with the plaintiff June 23, 1881, as a firm, under the name of The McGowan Pump Company, and that all the plaintiff's dealings with the defendants were as such partnership;" and evidence tending to show that the plaintiff was a corporation duly organized under the laws of New Jersey, and owned valuable patents for the grinding and pressing of tan bark, which it expected to utilize in this machinery and the use thereof; and evidence tending to show "that the machinery named in the said contract of June 23, 1881, was not completely finished and put upon the said boat within the sixty days named in said contract, nor for a long time thereafter, and that, when completed, it was of insufficient material, and not of sufficient power or strength to press a bale of tan bark with a pressure of fifteen hundred tons in two and one half minutes, nor within any time; that the entire machinery was wholly insufficient to accomplish the purpose for which it was constructed, and was

very rough, and was made in an unworkmanlike manner; that, in consequence thereof, it suffered great delay in the use of the said boat and machinery, and great damage in having to expend a large sum of money upon the same ; and that it lost a very large sum of money by the breach of the said contract before it was finished, and after that, because of the insufficiency of the said machinery and its defective character."

The contract of March 30, 1882, was in the words set forth in the third defence in the amendment to the answer. The plaintiff gave evidence tending to show that it had, prior to the 30th of March, 1882, paid to the defendants, on account of the machinery and work, $12,500, that a few days after signing the last-named contract, it paid the $4000 named therein, that no machinery had been put in the boat on the 10th of November, 1881, and that there was nothing ready on the boat by December 5, 1881 ; and evidence tending to show that, after it took possession of the boat and machinery, it made additions thereto, costing some $1200, a part of which the defendants did for it under a written contract of the 19th of April, 1882, mentioned hereafter.

The bill of exceptions also contains the following statements : "The plaintiff offered evidence of experts tending to show that the machinery and material of which it was constructed were poor and insufficient to sustain the required pressure ; and, upon cross-examination upon this point, the said witnesses gave evidence tending to show that a single hydraulic cylinder could not be made of cast iron so as to bear 1500 tons pressure ; that the water would permeate and pass through the iron, and, upon examination by the court, evidence tending to prove that it was not practicable to get such pressure with one cylinder of the kind, but that it might be done with three cylinders, of a pressure of 500 tons each upon one platen : and, on further cross-examination, they gave evidence tending to show that water would force itself through cast iron at 700 tons pressure, that cast iron is not safe for more than 600 tons. And the plaintiff gave evidence tending to show that the machinery was only of the value of scrap. The plaintiff also gave evidence tending to show that, at and

before the contract of March 30, 1882, was entered into, McGowan had stated that he had had a pressure, on previous tests, of 800 to 1000 tons on the machinery in pressing bark, and that said representations were false, and that plaintiff was thereby induced to enter into said agreement. Plaintiff gave evidence tending to show that the defendants had tested the machinery, and it was found defective, on the 27th of March, 1882, before the execution of the contract of March 30; and defendants gave evidence tending to show the contrary, and that they made no false representations, and that plaintiff knew, from its employes present at the test, what pressure it bore at the time, and reported to the plaintiff that it had never borne a pressure of over 400 tons, and that there was no more on it at that time. They gave evidence tending to show that McGowan claimed that the failure of the machinery was caused by the insufficient foundations of the boat, because the machinery was not adapted to the boat; that they had done all that was practicable, under the condition of the boat upon which the machinery was to be placed. But the plaintiff gave evidence tending, on the contrary, to show that it was practicable to construct such machinery of cast iron and place it upon said boat." "The defendants offered evidence tending to show that any such boat with machinery upon it had never before been known and used; that it had in no way been tested; and that it was an experiment. They also offered evidence tending to show that the plaintiff had possession of the said boat immediately after she came off the ways, on or about the 1st of November, 1881, and received the boat from Mack, and that it had witnessed experiments of pressing bark made with the machinery in January, February, and March, 1882, and was familiar with the condition, strength and workmanship of the same, before entering into the contract of March 30, 1882, and had knowledge before that of the amount of pressure which the defendants had used thereon." "The defendants offered evidence tending to show that they were not boat-builders, had no knowledge of boats or of boat-building, as the plaintiff knew, and that defendants refused to take any responsibility about the boat, and had nothing to do with

planning, constructing, supervising, accepting, or controlling it or its foundations; that they supposed Mr. Mack would attend to that; that the boat was not launched or presented for the machinery until November, 1881; that they supposed, when they commenced to put the machinery upon it, that it would be sufficiently strong; that the foundations, as they proceeded, proved wholly insufficient for that purpose, being too weak; that they reported it to the plaintiff's agent; that he said to them to go ahead and put it on and he would guarantee that they would stand; that the defects in the boat and the bad management of the machinery by the plaintiff caused all the difficulty and breakage in the machinery, and all the expense in repairing; and, in addition thereto, the defendants also offered proof tending to show that the boat was not ready for their work until about the 10th of November, 1881, and that they used due diligence in the manufacture of the machinery and in putting it upon the boat, and that the delay therein was due to the delay in finishing the boat and in the character of the boat when presented for the machinery to be put upon the same. They also offered proof tending to show that the material of which the said machinery was constructed was of sufficient strength to work 1500 tons and more. They also offered proof tending to show that, in March and April, 1882, the plaintiff took possession and control of said machinery, and that it was built and set up on its boat by the defendants under the contract of June 23, 1881, and afterwards, to make it more perfect, effectual, and useful, entered into the contract of April 19, 1882, with the defendants, and the defendants furnished the labor and the material provided for in said contract, and that the plaintiff used it on their said boat. The defendants also gave evidence tending to show that the machinery for pressing the bark was constructed of the very best cast iron, and that that was the only material of which said machinery is ever constructed; that the same was of the very highest and best character, and that the workmen upon it and the workmanship were of the highest and best character, and that they endeavored in every way they could to make this machinery as strong and as well as it could be

made. They also offered evidence tending to show that, after the boat was launched and ready for the machinery, they proceeded to put the machinery upon the boat, and thereafter they worked with due diligence in putting the same upon the said boat. The defendants also offered proof tending to show that they had fulfilled their contract and were not liable for any damage to the plaintiff, but, on the contrary, the plaintiff owed them for said work, and under the agreement of March 30, 1882, the sum of $8731.46. The defendants also offered evidence tending to show that they never examined Mack's contract, and that there was nothing said about the character of the foundations of such machinery; that they supposed that, Mack being a boat-builder, he knew what foundations for the machinery would be necessary. They also gave evidence tending to show that the McGowan Pump Company was a corporation at the time of entering into the contract of June 23, 1881, and was so acting in making the contract, and that the plaintiff was so informed of it before the signing of the contract." "They also offered evidence tending to show that the boat was not constructed to carry freight or passengers, and the propelling machinery was to be plain, unornamented machinery, to propel the boat from landing to landing at a rate of from two to two and a half miles per hour, and that, on her trip to Paducah and her trial trip up stream, she did more than that."

" All the letters of defendants, copies of which are attached in the exhibits, had the following letter-head printed on them:

---

'Established 1862.

'Theo. J. McGowan,                                    R. C. Bliss.
    'Senior partner of late McGowan Bros.
'Manufacturers of railroad water station supplies, water columns, tank valves, steam and power pumps, wrought and cast iron pipe, &c.
        'OFFICE OF THE McGOWAN PUMP CO.,
            'Nos. 141 AND 143 WEST SECOND STREET,
                'CINCINNATI, ——, 188-.'

---

being the printed letter-head that was in use prior to June 20, 1881, except" the letter of April 23, 1881, which had the same letter-head, omitting the word "The" before "Mc-Gowan Pump Co.," and a letter dated May 8, 1881, signed "The McGowan Pump Company," and addressed to Darwin. The bill of exceptions does not purport to set forth all the evidence that was given at the trial.

After the verdict and before judgment, the defendants moved for a new trial, and, in case it should not be granted, then in arrest of judgment, and, in case neither of such motions was granted, then to restrain the issuing of execution in this case to the amount which should remain after making the deduction of the amount sued for in the suit mentioned in the fourth defence in the amendment to the answer. These motions were denied, and the defendants excepted.

The first error assigned relates to the question whether the contract of June 23, 1881, was made by the defendants as copartners, or was made by a corporation called "The Mc-Gowan Pump Company." If by the latter, the action must fail.

The court, under exceptions by the defendants, gave the following instructions to the jury:

"1. If the jury find, from the evidence, that defendants, prior to the making of the contract of June 23, 1881, held themselves out to plaintiff as partners, and that plaintiff dealt with them as such prior to the making of said contract, and entered into said contract believing them to be a firm, and without notice of a corporation, then said defendants are liable on said contract, even though they should find that defendants were not, in fact, a firm, and that there was a corporation called 'The McGowan Pump Company.'

"2. If the jury find, from the evidence, that the defendants were, prior to June 23, 1881, doing business as partners under the name of 'The McGowan Pump Company' or 'McGowan Pump Co.,' and that plaintiff dealt with them before said date as such partners, and had no knowledge of any change in said business, then said contract is the contract of defendants, and defendants cannot avoid or escape liability thereon, even if on

that date a corporation existed called 'The McGowan Pump Company,' with which defendants may have been connected, and to which they had turned over their entire partnership business and assets."

The court also charged the jury as follows on the question of partnership, no part of which charge was excepted to by the defendants:

"The plaintiff has sued the defendants as partners, and can recover against them only as individuals, jointly, equally, and severally liable upon their contract. The two defendants, McGowan and Bliss, undeniably negotiated and executed the contract, but whether as individuals or as the representatives and agents of a corporation is the question you are to determine. On the facts of this case, which are not disputed, the law charges them as partners, in their liability on the contract with the plaintiff, unless they have established by proof that they were, in making the contract, only the agents of a corporation, and disclosed their agency to the plaintiff, or that this in fact was otherwise known to the plaintiff. It is wholly immaterial, if they were in fact partners, or held themselves out to the plaintiff as partners, which is precisely the same thing as if they were partners in fact, by what name they did their business or made this contract; whether they were known or contracted as 'Theodore J. McGowan & Bliss,' as 'McGowan Pump Company,' or as 'The McGowan Pump Company,' or whether they used any or all of these names indifferently or interchangeably. Now, if they held themselves out to the plaintiff as partners, it is unimportant whether they were a corporation or not in fact. Your inquiries are, 1st. Were they partners in fact in making this contract? If so, they would be liable as partners. 2d. Did they hold themselves out to the plaintiff as partners? If so, they would be liable in that relation. 3d. Were they in fact the authorized agents or representatives of a corporation competent to contract as a corporation, or did they assume to be so authorized, and in that representative capacity make this contract? If so, they cannot be held as partners, provided they disclosed their agency to the agents acting about this business for the plaintiff corporation,

namely Darwin, Beach, or Hill, or any of them, or if these agents of the plaintiff corporation otherwise knew that fact. If the jury find that, on the 23d of June, 1881, there was in existence a corporation called 'The McGowan Pump Company,' qualified to do business, when the contract of that date was signed in that name, and that the defendants were authorized to act for it, and informed Beach that it was that corporation making the contract, the verdict must be for the defendants, because the corporation is not here sued And, in ascertaining whether the corporation existed in fact, if you find that the entire amount of capital stock of 'The McGowan Pump Company' was subscribed, and the subscribers met and elected directors, and the directors elected Theodore J. McGowan president, and Robert C. Bliss secretary, and said president and secretary made the contract of June 23, 1881, in the name of 'The McGowan Pump Company,' and informed the agent of the plaintiff at the time that 'The McGowan Pump Company' was a corporation, and was contracting in that capacity, then the defendants are entitled to a verdict, notwithstanding it may appear to the jury that the subscribers to the articles of incorporation failed to certify to the secretary of state, as required by law, that said subscription of stock had been made. But, as a corporation in Ohio can only act by or under the authority of its board of directors, and on the 23d June, 1881, there is no evidence tending to show any action of the board of the corporation known as the McGowan Pump Company authorizing the contract in this case to be made, and authorizing either McGowan or Bliss to contract for the corporation, you should consider the fact that they had no such authority, on that date, to make a contract for the corporation, in determining whether they did in fact undertake to contract for the corporation, and whether the signature to said contract was the signature of the corporation or of the defendants as partners. But while you should give this fact its due weight, also the fact that the final organization sought to be proved was only a few days prior to the contract, together with all the other facts relating to the formation of the corporation, it is proper to say that, in the opinion of

the court, the want of direct authority conferred by a board of directors would not, in this controversy, so affect the contract as to convert it into one of partnership, because that is a question between the corporation and its officers assuming to act for it; wherefore, if you find that, notwithstanding this want of authority, the defendants assumed, in their corporate capacity, to contract with the plaintiff, and notified Beach that they were so assuming to act, or he otherwise knew it, your verdict must be for the defendants, irrespective of any want of authority. This point of notifying Beach is one of direct conflict of testimony between the parties, which you must settle under the rules to be hereafter mentioned, the court being content to say here that it is a matter in this lawsuit of paramount importance to both parties, which demands your most careful consideration. In determining these questions submitted to you on this branch of the case you may look to all the facts in proof having any bearing on the questions." "I invite your attention to certain features of the evidence on this branch of the case. From the origin of the transaction in controversy in this case, found in Darwin's letter of March 12, 1881, and even prior to that time, as shown by the defendants' dealings with him as president of another company, it is undisputed that the defendants dealt, in the negotiations with the plaintiff's agent, as partners, no matter under what name, until, at the very earliest, about the 20th May, when the alleged transfer of assets to the corporation is said to have taken place; and it may be you will find, in the disputed facts, that they so dealt down to about June 20, 1881, when the minutes of corporate organization, in proof, show that a more complete organization was attempted or perfected. The exact status of this corporation between these dates might be under some circumstances a matter of grave importance, as to which it would be the duty of the court to instruct you more fully. But here the court has, in the instructions already given, indicated the greatest influence it can have on this issue between the parties. Perhaps a fuller explanation of the legal effect of the proof about the status of this corporation may aid you. It cannot be denied that the defendants were part-

ners from the date of their partnership articles to the dissolu-
tion of the partnership by the substitution of a corporation;
nor can it be denied that, as early as 1880, more than a year
before this transaction began, the defendants took the primary
step to organize a corporation, but nothing more until May or
June, 1881, a short time before this contract was made; but it
is equally undeniable that they negotiated and dealt with
plaintiff as partners, necessarily so, until the corporation was
more thoroughly established than it was by this primary step.
Now, there is no proof tending to show the plaintiff's agents
had any sort of knowledge of the corporate existence of
'The McGowan Pump Company,' in fact, down to the very
moment of signing the contract of June 23, 1881, when the
defendants testify they told Beach of it, and that they were
contracting as a corporation, which is denied by the plaintiff."
"There is no proof whatever that plaintiff's agents" "were
ever informed by defendants of their own corporate capacity,
be it what it may, at any time prior to the signing of the con-
tract, or that by other means they had such information.
Therefore the court charges you, that, by their relations in
fact, the course of their dealings with the plaintiff, as shown
by their letters and repeated interviews with each other
throughout the negotiations, from the beginning to the mo-
ment of signing the contract, the defendants are estopped, in
fact and law, to deny that, as to the plaintiff, they were part-
ners in making the contract, unless you believe that they then
disclosed their corporate character to Beach. If you find
that to be a fact, the court has already told you that your ver-
dict should be absolutely for the defendants. If you do not
find that to be a fact, but, on the contrary, believe the plain-
tiff's proof that no such disclosure was made, the defendants
are liable as partners for whatever damages you may find for
the plaintiff, on the merits of the case."

The court also gave the following instruction, at the request
of the defendants: "2. If, before the 23d day of June, 1881,
the McGowan Pump Company had become incorporated and
organized under the laws of Ohio, with Theodore McGowan
as president and Robert C. Bliss as secretary, and if, when the

contract of that date was made, the plaintiff was informed by the defendants that the McGowan Pump Company, which entered into said contract, was a corporation, then the plaintiff cannot recover against the present defendants."

The court refused to give the following instructions asked by the defendants, and to each refusal the defendants excepted: "If the McGowan Pump Company, which entered into the contract of June 23, 1881, was in fact an incorporated company and not a partnership, then the plaintiff cannot recover in this case, whether the plaintiff supposed it to be a partnership or not." "31. If the agent of the plaintiff, sent here to make a contract for this work, did contract with the McGowan Pump Company, and had it explained to him that the said company had organized as a corporation, and the defendants went on under said corporation, and did the work provided for, which the plaintiff subsequently took from said corporation, they cannot now deny that they dealt with the said corporation."

It is objected, by the defendants, that the court did not specify any limit of time prior to the making of the contract of June 23, 1881, during which the holding out of the defendants to the plaintiff as partners, and the dealing of the plaintiff with them as such, would have the effect, in the absence of notice to the plaintiff of the change from a partnership to a corporation, to fix the liability of the defendants as partners; that, although the bill of exceptions states that the plaintiff and the defendants were in correspondence prior to the organization of the corporation, it does not state that there had been any dealings between them; and that, especially there was error in refusing to charge proposition 31, above quoted.

The bill of exceptions does not show that there was any evidence that the defendants went on doing the work as a corporation, or that the plaintiff took the work from the corporation. There was no exception to the general charge of the court on the subject, above quoted. The court, in its general charge, distinctly instructed the jury that, if McGowan, as president of the corporation, and Bliss as its secretary, made the contract of June 23, 1881, in the name of " The McGowan

Pump Company," and informed the agent of the plaintiff at the time that the McGowan Pump Company was a corporation and was contracting in that capacity, the defendants were entitled to a verdict. Again, the court instructed the jury that if, notwithstanding any want of authority in McGowan and Bliss to contract for the corporation, they assumed, in their corporate capacity, to contract with the plaintiff, and to notify the plaintiff's agent, Beach, that they so assumed to act, or he otherwise knew it, their verdict must be for the defendants, irrespective of any want of authority. Again, in its general charge, the court instructed the jury as follows: "If the jury find that, on the 23d of June, 1881, there was in existence a corporation called 'The McGowan Pump Company,' qualified to do business, when the contract of that date was signed in that name, and that the defendants were authorized to act for it, and informed Beach that it was that corporation making the contract, the verdict must be for the defendants, because the corporation is not here sued."

This disposition of the question of partnership by the court seems to us to have been proper, and to have been as favorable to the defendants as they were entitled to ask.

The criticism as to the want of the specification of the limit of time has no force. The bill of exceptions does not purport to state all the evidence that was given at the trial. It does not show what dealings had been had between the parties prior to the making of the contract of June 23, 1881; nor does it appear by the record that the attention of the court was drawn by the defendants to this point of the limit of time, or that any request was made in regard to it.

It is next objected, by the defendants, that the petition of the plaintiff alleges that the contract sued upon was fully performed by the plaintiff, and alleges, as a breach, that the defendants failed to erect and complete the machinery within the time set forth in the contract; that the averment of performance by the plaintiff is inconsistent with a recovery based on the theory that the defendants waived the performance by the plaintiff of the part of the contract relating to the time when the boat was to be furnished; that the plaintiff could not recover,

on the averments of the petition, without proving that the boat was ready to receive the machinery in time to allow it to be erected on the boat before the end of sixty days from June 23, 1881; and that the proof was that the boat was not ready for the machinery until about the 10th of November, 1881.

On this subject the court charged the jury as follows, under the exception of the defendants: "If the jury find that the contract was made, as alleged, with defendants, and that, after the day named for the completion of the contract, the work not being then completed, the boat was not then in readiness to receive it, yet, if the boat was thereafter made ready by James Mack, and the defendants proceeded under the contract, they were then bound to complete it within the same length of time contemplated by the original agreement, and such additional time as may have been lost in the prosecution of the work, occasioned by Mack's delay in the construction of the boat, and, failing in this, they are liable for the consequences of such failure and delay. Therefore, the court charges you that the defendants are only liable for any damage caused by delay for the period of delay found by application of the above rule to the proof in this case."

The defendants contend that this was not a proper charge under the issues, and that, if the boat was not ready for the machinery within the sixty days provided for by the contract, the agreement of the defendants, if they proceeded to construct the machinery, became an agreement to deliver it within a reasonable time after the boat should be made ready to receive it. In accordance with these views, the defendants asked for the following instructions, each of which was refused, and to each refusal they excepted: "4. That the contract sued on is entire, and required the plaintiff to have the machinery therein described built and set up on board a boat to be furnished by the plaintiff within 60 days from June 23, 1881, and that, if the plaintiff failed to furnish such boat until after the said period of 60 days from June 23, 1881, had expired, and, by reason of such failure, the defendants were unable to begin to set up such machinery on board said boat until after the expiration of said period of 60 days from

June 23, 1881, then the defendants are entitled to recover." "21. That, if the boat was not ready for the machinery in time to have the same put up within sixty days from the date of the contract, but the parties subsequently proceeded, at the request of Beach, to put the machinery upon the boat, they were only bound to proceed with reasonable diligence under the circumstances, and were not bound to complete the same within sixty days thereafter, if the boat or the foundations provided for the machinery were so insufficient as to prevent such completion within said time." "23. That, as the machinery was to be put up on a boat to be furnished by the plaintiff, to require of the defendants that they have the machinery finished and put up on the boat within the sixty days, the plaintiff must have had the boat ready and fit for the purpose in time to enable the defendants to have put the machinery in place upon the boat, the same being ready therefor, within the sixty days, and, if the boat was not ready in such time, then the plaintiff cannot recover damages for not having the said machinery so completed within sixty days. In such case the defendants were only bound to proceed with due diligence under the circumstances."

The argument on the part of the defendants is, that the plaintiff, by failing to have the boat ready in time for the performance of the contract according to its terms, prevented such performance; that there was no mere postponement of it for the number of days of delay caused by the plaintiff; that there is nothing to show that the defendants agreed, or would have agreed, to erect the machinery within sixty days after November 10, 1881; that, although both parties went on to perform the contract, the element of the fixed time was eliminated from it; and that the true rule is that the contract was to be performed in a reasonable time, having regard to the nature and circumstances of the performance.

The bill of exceptions states, that the plaintiff "gave evidence tending to show that the machinery named in the said contract of June 23, 1881, was not completely finished and put upon said boat within the sixty days named in said contract, nor for a long time thereafter;" that, in consequence

thereof, it "suffered great delay in the use of the said boat
and machinery, and great damage in having to expend a large
sum of money upon the same; and that the plaintiff lost a
very large sum of money by the breach of said contract be-
fore it," the machinery, "was finished."

The petition contains an allegation of special damage,
from the loss of tan bark occasioned by the delay in not erect-
ing the machinery within sixty days from June 23, 1881; but
the bill of exceptions does not show that there was any evi-
dence tending to establish this special damage, except as it
may be inferred, from the general charge of the court, that
such testimony was offered.  But the court, in its general
charge, instructed the jury as follows: "The contract bound
the defendants to complete the machiney and set it up on the
boat within sixty days.  It is too plain for argument, that the
failure of the plaintiff to have the boat ready would excuse
the defendants from strict compliance with this part of the
contract, and that all delay which occurred before the boat
was ready is out of the case.  The plaintiff was as much re-
sponsible for that as the defendants, or sufficiently so to pre-
clude him from complaint on that score."

It is, therefore, claimed by the plaintiff that no damages
were included in the verdict on account of the delay in not
erecting the machinery within sixty days from June 23, 1881.
This appears to be a sound proposition.  We see no error in
the charge of the court, that, if the defendants proceeded
under the contract, they were bound to complete the work
within the length of time contemplated by the original agree-
ment, and such additional time as was lost by the delay in the
construction of the boat.  There is nothing in the bill of ex-
ceptions to show that the machinery could not have been
erected within sixty days after the boat was ready to receive
it.  The parties treated the contract as in full force, except as
to the time in which it was to be performed, and the work
was done and the payments were made under the contract as
thus extended in time.  The defendants made no claim before
the suit was brought, that the contract was rescinded by
reason of the non-readiness of the boat until the 10th of No-

vember, 1881, or that there was any reason in that fact which prevented them from complying with their part of the contract within the sixty days after the delivery of the boat. No such defence is set up by them in their answer, and they introduced no evidence to that effect, so far as the bill of exceptions shows. These views are in accordance with the ruling of this court in *Phillips Co.* v. *Seymour*, 91 U. S. 646. The plaintiff went on paying the defendants on account for the machinery, and the defendants proceeded in erecting it without complaining of the delay in the furnishing of the boat, and without any claim that they were not required to furnish the machinery within the sixty days after the furnishing of the boat. See, also, *Graveson* v. *Tobey*, 75 Ill. 450.

The next assignment of error relates to the effect of the contract of March 30, 1882, set up in the third defence in the amended answer. The theory of the defendants is, that this contract was substituted for all prior contracts and ought to have been the basis of the suit. The Circuit Court treated it as merely waiving the provision of the original contract in regard to the time required for pressing and delivering each bale.

The court, in its general charge, charged as follows, in regard to the contract of March 30, 1882, under exception by the defendants: "But the plaintiff has not sued on that contract, nor averred any breach of it in that respect. It has sued for breaches of the guaranty for a good machine, and nothing else. This contract is pleaded by defendants as a defence to a claim of breach, and, so setting it up, the only question is whether it constitutes a defence. It is only a supplemental contract to that of June 23. It continues the guarantees of that contract, with the exception as to time. It does not make new guarantees for a new consideration, but obligates the defendants to carry out the old contract with the named exception, and imposes on defendants new obligations about the patterns, &c., which are independent and separable from the old contract and the old consideration. The court, therefore, charges you, that its only effect is to reduce the original guaranty of the capacity of the machine,

in respect to the time for pressing the bale, if you find there was no fraud in procuring it; if there was such fraud, it leaves that guaranty still in force." And again: "The defendants claim that its proper construction requires that the 1500 tons only applies to strength of material to endur that pressure, as a maximum of endurance, not for a continuous working pressure. It belonged to the plaintiff to say what it wanted, and to defendants to consider it when they made the contract, whether they could give that which was wanted. There is no proof tending to show that the proper construction is, that the plaintiff only wanted a machine of sufficient strength to endure a test of 1500 tons, but, on the contrary, read in the light of the circumstances proved, the language of the contract clearly means, that the plaintiff wanted a machine by which it could deliver on each and every bale a compression of 1500 tons, if it chose so to use it, and which would endure the work for the length of time such a machine would wear, under prudent and reasonable management by the plaintiff." Still further: "If the jury find that the terms of the guaranty provided by the contract are in writing, as expressed in the letters of April 23 and July 5, 1881, then, while the McGowan Pump Co. did not guarantee that bark would bale, it did guarantee to furnish practical machinery, set up on board of the boat, that was capable, in its designs and in all its parts, of being worked to apply 1500 tons pressure to press a bale of bark every two and one-half minutes, or within a reasonable time, if the contract of March 30 be valid, and capable, with reasonable care, in view of the character of such machinery and of the nature of the work, of continuous operation for the ordinary duration of such mechanism constructed for similar uses." "If the jury find that the contract of March 30, 1882, was duly made and is binding between the parties, it in nowise affects the right of the plaintiff to recover for any breach of the original agreement between the parties upon which this action is founded, or of the guarantees contained in such original agreement, except for the failure in respect to the time required to press bark with the machinery into bales, and to

remove them from the cylinders. All the other obligations and guarantees of the original contract would remain in full force, and the plaintiff's right to recover for their breach would remain unaffected by the contract of March 30, 1882."

The defendants requested the following instructions, each of which was refused by the court, and to each refusal the defendants excepted: "5. That the plaintiff cannot recover upon the issue in this cause if it appear to the jury, from the testimony, that the contract which has been read in evidence, bearing date March 30, 1882, was in good faith executed and delivered by both the parties to this cause." "10. That the plaintiff does not entitle itself to recover upon the contract of June 23, 1881, by showing that the defendants failed to comply with the contract of March 30, 1882." "That, even if it be true, and believed by the jury from the testimony, that the . contract of March 30, 1882, was broken by the defendants by non-delivery of the receipts, or of assignments of patent rights, therein described, nevertheless, such breach does not entitle the plaintiff to recover in this case upon the contract of June 23, 1881." "12. A breach of the contract of March 30, 1882, entitles the party who did not break such contract, if it suffered damages by reason of such breach, to recover in an action for such damages founded upon such contract, but it furnishes no ground for recovery in this case upon the contract of June 23, 1881, for damages suffered by reason of a breach of the last-named contract." "14. That, by the contract of March 30, 1882, the parties waived and withdrew all previous agreements and guarantees relating to the hydraulic machinery, except only that the material of which it was composed had sufficient strength to work up to a total pressure of a thousand tons, and that the defendants are not liable to damages, in this action, for any defect in said hydraulic machinery, if said material had sufficient strength to work up to such pressure, unless, under the charge of the court, the jury believe, from the testimony, that the said contract was procured by fraud or false representation, and is, therefore, not binding upon the plaintiff." "28. If it appear, in this case, that the machinery contracted for in the contract of March 30, 1882, was not pos-

sible to be made as working machinery, because the material of which it was to be made was not capable of sustaining any such working pressure, yet that the material used by the defendants was of the strength of 1500 tons, then the contract of the 30th March, 1882, must be construed as relating to the strength of the material and not to the working capacity of the machinery."

The argument on the part of the defendants is, that the instrument of March 30, 1882, contained a new contract, and that the effect of it was to withdraw all guarantees relative to the hydraulic machinery, except that the strength of the material would be such as to bear 1500 tons pressure; that the new contract did not modify the original guarantee that the boilers and machinery for propelling the steamboat would be made in a workmanlike manner and of first-class material, with sufficient capacity to do the required work and to pass government inspection, but that all guarantees in regard to the hydraulic machinery intended to press the bark into bales were withdrawn, except the one relating to the strength of material; and that, as to that, all guarantees were withdrawn except that the material would bear 1500 tons pressure, not for continuous work, but a pressure up to 1500 tons, or without bursting upon test.

The view taken by the court on this subject is shown by the following instructions given by it, to each of which the defendants excepted: "5. The written contract, if the jury find it was made between the plaintiff and the defendants, requires the machinery to be made under it to be constructed in a workmanlike manner and of first-class materials and to be set up aboard of the plaintiff's boat, in Cincinnati. The machinery is to have sufficient capacity to do the required work, and is guaranteed by the McGowan Pump Company. The contract having thus defined the character of the work, it cannot in that respect be varied by parol evidence, which is admissible only to enable us to properly interpret the contract. It required the machinery to be constructed in a workmanlike manner and of first-class materials." "6. The machinery being constructed to be set up on the plaintiff's boat, it is for the

jury to determine what the boat was that was referred to, and, if the boat intended was one provided to be constructed by one James Mack, of a kind, and of dimensions, and with bulk-heads and foundations then defined and understood by the parties, then this contract to construct the machinery required the McGowan Pump Company to furnish whatever was necessary for the efficient working of the machinery upon the boat and bulk-heads so defined and understood by the parties, for rendering the machinery stable to do the required work, when set up aboard the boat."

The court also refused to give the following instructions asked by the defendants, and they excepted to each refusal: "18. If the machinery contracted for in this case was in fact incapable of working up to the pressure of 1500 tons, required by contracts between the parties, and this incapacity resulted not from any defect of workmanship or construction, but from the fact that such machinery, of the character and description provided for by said contracts, cannot be made capable of working up to such pressure, and if the machinery was in fact made of first-class material and in a workmanlike manner, and was capable of receiving the greatest pressure machinery of the description called for by said contract could be made to work up to, then the fact that said machinery will not work up to such pressure does not entitle the plaintiff to recover any damages based on such incapacity to work up to such pressure." "That the guarantee referred to in the contract of June 23, 1881, is a guarantee of the machinery to be made, and not a guarantee as to its operation upon the boat which the plaintiff might present for that purpose to the defendants."

The defendants also excepted to the following parts of the general charge of the court: "But, if you find that, within the range of mechanical art, such pressure could have been delivered to the bark, it was their obligation to do it. The whole field of mechanical engineering was open to them, except so far as it was restricted by the necessity of placing the machine upon a floating foundation, to be furnished by the plaintiff, of which more hereafter will be given you in

charge. They were not restricted in plans, specifications, or
materials, and were bound to select such plans and materials
as were available and capable of doing the work. It was
their misfortune if the price demanded was not sufficient to
cover the cost, but that fact, if it be one, cannot relieve them.
In short, they contracted as 'mechanical engineers,' and as
manufacturers, and are bound by the contract as they made it
in this respect."

In regard to the foregoing matters the defendants allege,
as error, that the Circuit Court held that the contract was
broken unless the hydraulic machinery had sufficient capacity
to do the required work, was constructed in a workmanlike
manner and of first-class materials, and would work efficiently
and be capable of continuous operation for the ordinary dura-
tion of such mechanism, constructed for similar uses, and be
able to deliver a pressure of 1500 tons to the bark, and that
the plaintiff could by it compress every bale to the extent of
1500 tons pressure, for the length of time such a machine
would work under prudent and reasonable management.

The contract of March 30, 1882, did not, as erroneously
stated in the 28th request of the defendants, contract for any
machinery. It refers to the machinery as being in existence,
and provides for the transfer to the plaintiff of the title to it
and to certain extras, and adjusts the amount due under the
original contract at the sum of $11,200. It contains a modifi-
cation of the original contract in respect to the time required
for each pressing and delivery of a bale, and provides, in sub-
stance, that the original agreement, with its guarantees as to
the hydraulic machinery, shall otherwise remain unaltered.
The court, in its general charge to the jury, charged on these
matters as follows: "But it is insisted this contract of March
30, 1882, is not binding and can have no effect in this suit,
because defendants have not performed their part of the con-
sideration, namely, the delivery of the vouchers or receipts
mentioned, the transfer of the patterns, the interest in the
patents for the accumulator, and the double end; that, as to
the latter, there is no patent and can be no performance.
The defendants insist, on the other hand, that the balance of

the money has not been paid by the plaintiff, and it cannot complain of non-performance, and there is proof tending to show defendants have still pending an application for this patent. The court regards all this subject as immaterial to this controversy, and charges you that the obligation to perform these things by the defendants does not arise until the money is tendered or paid, and no breach could be averred until that has been done. But the plaintiff has not sued on that contract nor averred any breach of it in that respect. It has sued for breaches of the guaranty for a good machine, and nothing else. This contract is pleaded by defendants as a defence to a claim of breach, and, so setting it up, the only question is whether it constitutes a defence." "The court, therefore, charges you, that its only effect is to reduce the original guaranty for the capacity of the machine in respect to the time for pressing the bale, if you find there was no fraud in procuring it; if there was such fraud, it leaves that guaranty still in force. But you must understand that the failure, if any, of the defendants to deliver the vouchers, patterns, &c., does not at all contribute to any alleged breach of the guaranty for the capacity and quality of the machine, and such failure does not entitle plaintiff to recover for anything sued for in this suit."

We are of opinion that the court rightly disposed of the questions involved in the foregoing branch of the case.

It is also alleged, by the defendants, as error, that the court instructed the jury, that if they found for the plaintiff, they were not to make any deduction from the amount of damages on account of any balance claimed to be due from the plaintiff to the defendants on account of the contract for the machinery, or on account of any other contract. The defendants claimed to recoup the sum of $7200 as remaining due to them under the contract of June 23, 1881, or that of March 30, 1882, and the further sum of $1531.46 for extra work alleged to have been performed by them; but they did not, in any of their pleadings, set up any counter claim or right of recoupment as to those items; and it is alleged, in the fourth defence in their amended answer, that an action is pending against the

plaintiff by the McGowan Pump Company ·to recover the $1531.46.

It is also alleged, by the defendants, as error, that the court did not instruct the jury, as requested by the defendants, that, although the machinery was in fact incapable of working up to the pressure of 1500 tons, and the incapacity resulted from the fact that machinery of the character and description provided for by the contract could not be made capable of working up to such pressure, the fact that it would not work up to such pressure did not entitle the plaintiff to recover any damages based on such incapacity. The bill of exceptions states that the plaintiff gave evidence tending to show that the machinery was only of the value of scrap, and it does not state that there was any testimony given to show that, without the capacity called for by the contract, it was of any value be yond its value as scrap iron, or that there was any testimony tending to show that the loss of actual value upon the machinery was less than the amount found by the jury, or that the machinery had any value except that of old iron, if the pressure with which it would work would have no effect in doing the needed work upon the tan bark.

The rule of damages laid down by the court was as follows, and was not excepted to: "The rule for measuring the plaintiff's damages is to find the difference between the money value of the machinery contracted for, if it had been constructed in all respects according to the contract as it has been construed for you by the court, and the money value of the machinery as it was actually constructed and delivered to the plaintiff, to which may be added the items of expense for keep of the boat during the delay, caused solely by the delay."

As to the refusal of the court to give the 24th instruction requested by the defendants, we are of opinion that the general charge of the court properly covered.the matter involved, and that the court made no error in refusing to charge as requested in regard to the contract of April 19, 1882.

There are other matters arising on the charge and the refusals of the court to charge, which are either covered by

the observations already made, or upon which, although the questions raised in regard to them have been considered by the court, it is not deemed necessary specially to remark.

The objection to the competency of the testimony of the witness Kemplin, as an expert, was properly overruled. He was a hydraulic engineer, and had been engaged in the construction of steam-engines and other machinery for many years, although he had never built any steam-engines to be used on the Western rivers. He was on board of the boat during its trip from Cincinnati to Paducah, and saw the propelling machinery in operation and examined it, and gave testimony as to the value of propelling engines for such a boat and as to what it would cost to make them good. The question as to the weight of his evidence was one for the jury, in view of his testimony as to his experience.

On the whole case, we are of opinion that there is no error in the record, and the judgment of the Circiut Court is

*Affirmed.*