Nott, Ch. J.,
delivered the opinion of the court:
On the 1st of August, 1892, the contracting officer of the United States mailed the contract in suit at Chicago, duly executed by both parties, to the Chief of Engineers in Washington for his approval. It was immediately disapproved, and returned to the officer with instructions to readvertise ■ the work. This was done and the work was subsequently let to other parties. The contractors bring their suit accordingly for their- losses sustained and gains prevented.
Whether the reason for which the Chief of Engineers disapproved the contract was a good and valid one the court has not been called upon to determine. The question involved in the case is, whether the approval of the formal contract by the Chief of Engineers was essential to its validity, or, stated differently, whether in the circumstances of the case he could annul an otherwise valid contract by the mere act of his disapproval.
*204 In Speed’s Case (8 Wall., 77) the Supreme Court held, con-, cerning a contract which in terms provided that it should be subject to the approval of the Commissaiy-General, that his approval need not be in writing. This court had found from circumstantial evidence that the contract and the performance of the contractors under it were known to the Commissaiy-General and that he had indicated his approval 'by letter to the contracting officer, and the court had held that the contract had been approved. The decision was affirmed by the Supreme Court for the reason that neither the instrument itself nor any rule of law prescribed the mode in which the approval should be evidenced, and that a jury would have been justified in finding as this court had done. In this case the contract likewise contained a provision that “this contract shall be subject to approval of the Chief of Engineers.” But there the resemblance between the two cases ends. In the former case the superior officer impliedly and indirectly, though informally, approved; in this case, without laches or delay, he unequivocally disapproved.
In the somewhat similar case of Darragh (33 C. Cls. R., 377) it was held “that where a contract is in tesms subject to the approval of the Quartermaster-General, approval is a condition precedent to the legal effect of the agreement.” The counsel for the claimant Seeks to take this case out of the rule of that decision by reason of certain peculiar facts and circumstances.
These facts and circumstances show that the printed form of the agreement was prepared by and furnished to the contracting officer by the Chief of Engineers, and therefore was within his knowledge and to that extent had his approval; that the contracting officer submitted the contractors’ bids to the Chief of Engineers before entering into the contract, and was duly authorized and empowered by the Chief of Engineers to accept the bids and enter into the agreement; that the objection of the Chief of Engineers did not relate to any provision of the contract, but was based simply upon the fact that he himself had not approved it before the 1st of August, 1892, when the act was passed making it penal for a contractor to permit or allow more than eight hours’ work in any calendar day. {Act of August 1, 1892, 27 Stat. L., 340.)
*205 As before said, it is not the duty of this court to pass upon the question whether the reason for which the Chief of Engineers disapproved the contract was valid and sufficient. Neither is the court required bjr the circumstances of the case to find whether there was an implied or circumstantial approval of the contract. The action of the Chief of Engineers was certainly prompt and unequivocal. If he had done nothing and had allowed the contractors to proceed with the work, and had approved vouchers for payment as the work progressed, it is probable that the case would be considered as coming within the rule sanctioned by the Supreme Court in Speed’s case. But here the written formal contract, the final act of the parties, expressly provided in so many words “that this contract shall be subject to approval of the Chief of Engineers,” and it is impossible for the court to hold that those words meant nothing, or that they meant that a prior contract had been approved by the Chief of Engineers. On the contrary, the court must reiterate the decision in Dar-ragh’s case and say that where a contract entered into by a subordinate is in terms subject to the approval of his superior, approval is a condition precedent to the validity of the agreement.
In addition to gains prevented, the claimant seeks to recover for certain expenses to which they were put by the action of the defendants’ officer’s. The contract bears date the 19th July, 1892, It provides in terms that the contractors “shall commence work on or before the 1st day of August, 1892,” but it appears by evidence aliunde that the instrument was not mailed to the contractors for signature until the 20th July, 1892; that it was returned for corrections; that it was not finally mailed for signature until the 27th of July, 1892, and that it was not signed by the contractors until some day between the 27th of July and the 1st of August, 1892. On the faith of the agreement executed by the contracting officer, but without his knowledge or direction, the contractors proceeded to make ready for their work and, indeed, performed to some extent, incurring thereby a loss of $678.21. This makes what is commonly called ‘ ‘ a hard case. ” Nevertheless, if the approval of the Chief of Engineers was a condition precedent to the validity of the contract and the work was done *206 without the knowledge or direction of the officer in charge and no benefit resulted thereby to the defendants, it must be held that the service was voluntary. The contractors acted in good faith, but at their own risk. No man can thrust a contract upon another. There must be agreement or something from which agreement can be inferred — request, acquiescence, knowledge, or the retention of a considei’ation which can be returned. Á contract- can not be implied from the voluntary acts of only one party.
The case has come before the court upon a motion of the defendants which their counsel has likened to a demurrer to the evidence. If it were being tried in another court at nisi jyriius, the defendants might move, in like circumstances, that the claimants be nonsuited, or ‘might demur to the evidence, or request the court to direct a verdict for the defendants. Here the claimants have closed their evidence and rested their case. In modern practice the defendants would be entitled in another court to test the sufficiency of the claimants’ case in some way without being put to the trouble and expense of' refuting it by evidence. If their motion, or demurrer, or whatever it might be, should be sustained, th^t would be the end of the case; if overruled, they would proceed with their defense. There is no objection to a like practice in this court. It may necessitate two arguments; but that is an objection which would also exist in any other court. Certainly the Government ought not to be put to the expense and trouble of taking evidence where a case can be disposed of on a question of law.
But inasmuch as the claimants may wish to appeal and the evidence can not go up, this court will now find the facts and assess the damages which the claimants have suffered. The findings will then be, to all intents and purposes, a verdict taken subject to the opinion of the court. The claimants, as has been said, have exhausted their testimony, and the counsel for the defendants, in view of this motion, is content therewith. The case is simple, for the reason that there has been no partial performance of the work. If the work had proceeded, as in the ordinary ease of contract, to partial completion, the claimants would be entitled to the two elements of damage which the law recognizes, “losses sustained”'and *207 “gains prevented.” {Bulkley's Case, 7 C. Cls. R., 543; affirmed, 19 Wall. R., 37.) But in this case substantially nothing has been done, and it is simply their profits which must be a matter of computation. In the contemplation of all parties who enter into express agreements it is supposed and understood that a reasonable profit shall be made by him who performs. (BulMexj's Base, supra.) It is a matter of judgment what a reasonable profit is, and there have been numerous cases before the court showing that from 10 to 25 per cent is regarded, prospectively, as the range of profits which contractors hope or expect to make. Taking this in connection with the evidence in the case, the court finds the amount which the claimants would have made if they had been permitted to perform and the amount of the expenses which they have incurred upon the faith of the contract which they signed; but upon the law the court holds that judgment must be for the defendants.
The judgment of the court is that the petition be dismissed.