Campbell, Chief Justice,
dissenting:
If the rule announced in the opinion in this case should be regarded as stare decisis in this court, I would hesitate to express a dissent, but it seems to me that the rule is contrary to former decisions of the court and that therefore it may more accurately be said that there is a conflict caused by the rule now announced.
In the Jones case, 11 C. Cls., 733; 96 U. S., 24, full effect is given to a provision that time is of the essence, and the principle was applied against the defendants in Roettinger’s case, 26 C. Cls., 391. Other cases could be cited.
The opinion of the majority in this case declares that “ time is of the essence of the contracts ” involved.
Both contracts are dated December 31, 1907, and provide that they are made subject to the approval of the Chief of Engineers, United States Army; and they were not approved until some time in January, 1908. According to these contracts the work was to be completed on or before *363 June 30. The approval of the contracts was a condition precedent to the validity of the agreement. Monroe's case, 35 C. Cls., 199; 184 U. S., 524.
There is a special provision in the contracts looting to an extension of time, and in that event it is provided that the contractor would pay the cost of supervision and inspection during the extension, if it be granted. An extension was granted at the request of the claimant, made before the expiration of the time limit, and upon settlement the accounting officers charged the claimant with the cost of inspection and supervision during the period of the extension; and one element of the suit is to recover this amount from the defendants.
The court finds that there was delay in approving the contracts beyond a reasonable time, and it proceeds to ascertain what was a reasonable time within which the contracts should have been approved, and having ascertained that reasonable time, adds the same to the period fixed in the contracts for performance; and finding that the work was done within the time thus extended, holds that the cost and expense of supervision and inspection, though expressly provided for in the contracts, could not properly have been deducted by the accounting officers from the amount due the claimant, and that the claimant may recover the same.
If there had been a provision in the contracts that the cost and expense of suprevision and inspection of the work should be borne by the claimant, no reason is apparent why such a stipulation would not have been valid if agreed to by both parties; and similarly no reason is apparent why the parties may not agree that a part of the cost and expense of supervision and inspection shall be borne by the claimant; nor why, if the parties do so agree, the claimant should 'not be chargeable with the cost and expense of supervision and inspection in case it seeks and is granted an extension of time as provided for in the contracts.
When the contracts were signed they contained said provision together with the undertaking that the work should commence within 30 days after the date of notification of approval of the contracts by the Chief of Engineers, United *364 States Army, and be completed by June 30, 1908; and when the contracts were approved and the claimant notified of the approval they contained the stipulation that the work should be completed by June 30, 1908.
The majority of the court ascertains what in its judgment was a reasonable time within which the contracts, after being signed by the contractor, should have been approved by the Chief of Engineers, and, having ascertained that reasonable time, has added the same to the period fixed by the contracts for performance, and now makes the contracts, which by their terms declare “work shall be completed by June 30, 1908,” to read in effect that it should be completed by July 30, or such other date to which the reasonable time so ascertained would carry it. The contracts say the work shall be performed by the 30th of June, but the court says that means, under the facts of this case, it should be performed by some date in July or August. There was no contract in this case until it was signed and approved. The bids or acceptance of them did not have the effect of making a contract. Clark v. United States, 95 U. S., 953; Monroe and Richardson v. United States, 35 C. Cls., 199; 184 U. S., 524. When, therefore, the claimant signed the instruments which had been prepared and tendered on December 31, it knew that by signing them and upon their approval it bound itself to complete the work therein mentioned. It is no answer to this proposition to say that it was under bond to execute the contracts. If its obligation to execute the contracts was conditioned upon the preparation of them within a reasonable time, and if there was undue delay in their preparation, claimant might have declined to sign them, protesting if need be that the delay had rendered its performance within the time fixed therein impossible; and assuming such to be the fact, it would have been a complete answer to any suit upon the bond for failing to execute the contracts. But having signed the contracts as written, and having entered upon their performance without objection when they were approved, and having failed to make any complaint or otherwise avail itself of the objection to signing or performing the contracts because of the delay, it can not be allowed by facts preceding *365 the execution or delivery of the contracts to excuse its performance according to the terms of the contracts and within the time which, according to the majority opinion, was of the essence of the contracts. The rule may appear harsh in particular cases, but the court can not protect the claimant against its own improvidence.
Courts of law may hesitate to declare that in certain contracts time is of their essence, and courts of equity do hesitate to declare it; but where it is declared in either of these courts that time is of the essence of the contract there is unanimity in the decisions to the effect that the party complaining must be left where he has placed himself unless he can show that his performance has been prevented by some act of the other party affecting the time of performance rather than the time of execution of the contract. The contract as executed is presumed to express the terms to which the parties have agreed and by which they are willing to be bound.
As above stated, the contracts in this case make provision for an extension of the time of completion by agreement of the parties, and in case of extension that the claimant would bear the expense of supervision and inspection during the period of the extension. The time was extended by virtue of this stipulation at the request of the claimant before the expiration of the period fixed for complete performance. The effect, therefore, of the opinion is not only to extend the time by an act of the court beyond the date named in the contracts, but also is to relieve the claimant from the express terms of the contracts whereby it agreed to pay the cost of inspection and supervision if an extension were granted. The length of the extension is the period which the court determines was a reasonable time within which the contracts should have been approved. This, it seems to me, is making a new contract for the parties, and the effect of the rule announced goes even further than stated above, because, where the parties have agreed upon liquidated damages in case of nonperformance within the time limited, the ruling removes that feature entirely from the. contracts and remits the defendants to actual damages, thereby depriving them of a *366 valuable feature of the contracts themselves. It is difficult, and in many cases impossible, for the Government to prove the amount of actual damages in cases of this sort, and it is perfectly competent to stipulate in advance for liquidated damages to be paid in case of breach instead of leaving the question to the uncertainty incident to proving actual damages. This uncertainty of proof, or the impossibility of it, furnishes a strong reason for allowing liquidated damages and construing clauses in certain contracts as providing for liquidated damages instead of a penalty. Sun Printing & Publishing Association v. Moore, 183 U. S., 642.
The consequences therefore of the rule announced in the majority opinion may be far-reaching and, as it seems to me to conflict with the current of well-established cases, I am constrained to dissent.
“ If there is an express provision making time of the essence of the contract, full effect must be given to it.” (2 Page Contr., sec.1162.) “And the statement that time is of the essence of a contract means that the provision fixing the time of performance is looked upon as a vital term of the contract, the breach of which may operate as a discharge of the entire contract.” Ibid., sec. 1159.
At common law the rule was inexorable. In Miller v. Phillips, 31 Pa. St. Repts., 218, 224, it is said: “Where parties choose by clear and explicit terms to make time of the essence of a contract, performance to be entitled to compensation must be within it, and nothing but the act of God rendering compliance physically impossible will excuse a failure.” Where the parties had made time of the essence of their contract it was said: “However harsh or exacting its terms may be as to the appellee they do not contravene public policy and, therefore, a refusal of the court to give effect to them according to the clear intention of the parties is to make a contract for them which they have not chosen to make for themselves.” Chaney v. Libby, 134 U. S., 78; Railroad Co. v. Smith, 21 Wall., 255, 263; Dermott v. Jones, 2 Wall., 1; The Harriman, 9 Wall., 161, 172.
In an extended note to Jones v. Robbins, 50 Am. Dec., 593, Mr. Freeman collates the authorities and states the rules *367 relative to the effect of making time of the essence of a contract. He there says: “At law time is always of the essence of the contract,” and points out that it may be so in equity where the contract evinces a real intention on the part of the parties to make it so. Quoting from Hipwell v. Knight, 1 You. & C., 401, 416, he adopts the language of Alderson, B., as follows: “I do not see, therefore, why, if the parties choose even arbitrarily, provided both of them intended so to do, to stipulate for a particular thing to be done at a particular time, such stipulation is not to be carried literally into effect in a court of equity. That is the real contract; the parties had a right to make it. Why, then, should a court of equity interfere to make a new contract which the parties have not made % ”
In Carter v. Phillips, 10 N. E. Rept., 500, the Massachusetts court says: “ In applying this doctrine to any contract a court of equity seeks to look through the language used to the real intention and purpose of the parties, and if a time for performance is stipulated in the contract and it appears that the parties intended to make such time an essential element of their agreement the court will carry it into effect. To do otherwise would be to enforce a different contract from that which the plaintiff made.”
In Moot v. Business Men's Association, 35 N. Y. Sup., 737, it' is held that where parties make time of the essense of a contract they must perform it within the limitation. To the same effect also is Thornton v. S. & B. R. R. Co., 84 Ala., 109; 5 Am. St. Rept., 337, where the rule was applied in a court of equity. In Underwood v. Wolf, 131 Ill., 425; 19 Am. St. Repts., 40, it is' declared that one who contracts to complete certain work within a certain time is liable for not completing it within such time unless prevented by the act or fault of the other party. See also Shinn v. Roberts, 1 Spenc., N. J., 435; 43 Am. Dec., 636; McGrath v. Gegner, Md., 39 Am. St. Repts., 415; Wells v. Smith, 7 Page Chy., 22; 31 Am. Dec., 274; Miller v. Cox, 96 Cal., 339; Slater v. Emerson, 19 How., 224; McGowan v. American Tan Bark Co., 121 U. S., 575; Dermott v. Jones, 23 How., 220.
*368 In The Harriman, 9 Wall., 161, 172, it is said: “The principle deducible from the authorities is that if what is agreed to be done is possible and lawful, it must be done. Difficulty or improbability of accomplishing the undertaking will not avail the defendant. It must be shown that the thing can not by any means be effective. Nothing short of this will excuse nonperformance. The answer to the objection of hardship in all such cases is that it might have been guarded against by a proper stipulation. It is the province of the courts to enforce contracts — not to make or modify them. When there is neither fraud, accident, nor mistake, the exercise of dispensing power is not a judicial function.” See also Boyden v. United States, 13 Wall., 17, 22.
In Phillifs v. Seymour, 91 U. S., 646, there was a contract providing that the work should be done by a day certain, and the court said: “There is no doubt that in this class of contracts, if a day is fixed for performance the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness and willingness to do it, or he can not recover in an action at law for nonperformance by the other party.”
From these authorities it is manifest that the claimant could not have recovered upon its original contracts, and that having procured an extension provided for in the contracts and having completed the work under such extensions its action, if upon the contracts, should be based upon the contracts as modified. But the modification of the contracts provided that claimant should bear the expense of supervision and inspection, and this it has undertaken to do in the original contract, and I think the court may not relieve it from this undertaking where it is not shown that its performance was prevented by an act of the defendants done after the execution of the contracts. It frequently happens that work is suspended at the request of one party or that such party fails to perform some condition precedent required by the contract before it can be performed by the other party, and in such cases such other party is relieved from performing within the stipulated time, not, however, by something done anterior to the execution or delivery of *369 tbe contract, but by something which is done during the period fixed for its performance. It is readily conceded that the defendants could not prevent the performance of the contracts by the claimant and yet hold the claimant to its performance, but that is not to concede that delay in the execution or delivery of a contract would justify the court in relieving the claimant from the express term of its own undertaking.
The cases in this court relied upon in the majority opinion are the Ittner, Little Falls Knitting Co., Callahan Construction Co., and Laidlaw-Dunn-Gordon Co. cases. The last three practically follow the Ittner case, and as I read the cases relied upon in- that case to sustain the proposition under consideration they fail to sustain it. The principal case relied on in that of Dannat v. Fuller, 120 N. Y., 554, which was decided by a divided court, one of the judges dissenting upon the proposition that the point was not made in appellant’s brief, was not argued orally, and does not appear even to be raised in the case. It will be noted that the plaintiff in that case brought suit ágainst the contractor upon his contract, wherein it was agreed to complete certain work within a specified time. It appears that the plaintiff by the terms of the contract had to perform certain work before the defendant could do the work stipulated to be done by the latter. The court says: “ The performance of this part of the contract on the part of the plaintiffs was required before the defendant could proceed and complete the contract on his part. It is a well-settled rule that where one party demands strict performance as to time by another party he must perform on his part all the conditions which are requisite in order to enable the other party to perform his part, and a failure on the part of the party demanding performance to do the preliminary work required in order to enable the other party to complete his within the time limited operates as a waiver of the time provision in the contract.” It is apparent that the court is here referring to an act which the plaintiff was required to do in the performance of the contract and not something which he may have done or failed to do with reference to the execution of the con *370 tract,, because the court proceeds to say: <£ It consequently appears to us that the failure of the plaintiffs to perform on their part operates as a waiver of the performance of the contract as to time and the defendant consequently had the right to perform his part of the contract within a reasonable time after the plaintiffs had completed their part.” And proceeding to discuss the conclusions of the referee in that case, which were declared to be unsound and unjust to the defendant, the court said: “The allowing of the defendant 30 days additional time in which to complete the contract, as was done in this case by the referee, does not restore the provisions of the contract which had been waived. It was, in effect, the making of a new contract for the parties by the refree. The defendant having contracted to do this work within a specified time was bound to have his servants and employees on hand ready to perform within that time. * * * They could not prevent his performance by delays on their part for even a greater period than that specified in the contract in which he was to perform, and then require him to proceed immediately, for this would require him to do the work at another time than that named in the contract, and when he might be under obligations to other parties.” In that case the defendant, had made an agreement to erect a mill within 30 days after April 20. The referee found that the foundation which the plaintiff was to erect was not ready for the mill, which delayed defendant 30 days. The mill was never completed according to contract, and on August 26 plaintiff gave notice to the defendant that it rejected the mill. The lower court finding in favor of the plaintiff, the judgment was reversed, and it seems from the opinion that the court proceeded upon the theory that the parties having acquiesced in the delay and proceeded to do the work the defendant should have been held to do it within 30 days from the time he was allowed to begin. However this may be, it is clear that this case does not sustain the theory that time taken to complete the execution of a contract can be added to the time stipulated for its performance.
In District of Columbia v. Camden Iron Works, 181 U. S., 453, it was held that where strict performance by plaintiff is *371 prevented or waived by defendant a claim by defendant of penalties for delay or failure can not be sustained. The facts of that case show that the suspension occurred after the performance of the contract was begun by the plaintiff, and it is pointed out in the opinion that the contract did not provide that the work was to be completed “within 136 days after its date,” but within 136 days after the “date of the execution of the contmet ”/ and it was said (p. 461) to be important to show that the date of execution (delivery) was subsequent to the date in the face of the paper.
In the case at bar the contractor was required to commence work not within 30 days after the date of the signing of the contract but within 30 days after the date of notification of its approval by the Chief of Engineers. And so in the last-named case the court said: “ If a party to a contract who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispense with, or by any act of his own prevent the performance, the opposite party is excused from proving a strict compliance with the condition. Thus, if the precedent act is to be performed at a certain time or place, and a strict performance of it is prevented by the absence of the party who has a right to claim it, the law will not permit him to set up the nonperformance of the condition as a bar to responsibility which his part of the contract has imposed upon him.” And thus again it appears that the ruling turned upon the fact that the party insisting upon the performance had failed to perform on his part a condition precedent, or had dispensed with complete performance by a waiver of it. In the case of Dodd v. Churton, 1897, 1 Q. B., 562, relied on to sustain the citation from 1 Hudson on Building Contracts, it appears that D contracted to erect certain buildings for C for a price and to pay liquidated damages for delay after a fixed date; the contract gave power to order additional works, and additional works were ordered by C. Action was brought by the contractor, the owner made a claim for the liquidated damages provided for, and it was held that C had disentitled himself to claim the damages by reason of having ordered additional works which involved a delay in completion. It *372 is manifest that this case does not affect the question under discussion, because, as stated above, a party can not after performance begun do something under the contract a natural effect of which extends the time necessary for performance by the other party and then insist that the party should have performed according to the strict letter of the contract.
Standard Gas Light Co. v. Wood, 61 Fed., 74, was also cited in the Ittner case. But in that case plaintiff contracted to do work for defendant and complete it “ by November 15, under a penalty of $100 per day, provided you have foundation ready by June 15,” and it was accordingly held that the completion of the foundation was a condition precedent, in default of which defendant could not claim the penalty as liquidated damages for plaintiff’s delay. The court said: “ When the condition upon which the promise depended was unperformed, through the default of the gas company, the promise to complete by a certain day was no longer obligatory; but, if the contractors entered upon the work, they were under an obligation to finish within a reasonable time. The gas company had, by its own default, waived or abandoned the right to call upon the contractors for strict performance as to time, who, if they entered forthwith upon the work, had the right to a reasonable time for performance.” And to this proposition the court cites Dannat v. Fuller, supra. But it will be borne in mind that the condition which was unperformed by the gas company was its failure to provide the foundation, thus showing that it was a matter of performance of a part of the contract on its part, or a condition precedent in which it failed, which gave the contractors the right to defend against the stipulation.
In Morse Dry Dock Co. v. Seaboard Trans. Co., 161 Fed., 99, an action was brought by a contractor upon a contract whereby he agreed to make alterations in a ship and to complete the work in 35 days from the time of the delivery of the ship at his yard or pay her owners liquidated damages at the rate of $50 a day thereafter. The ship was delivered at the yard September 7, and on September 16 the parties agreed to modify the contract by a change in certain specifications, and the respondent also ordered certain extra work. *373 According to the contract, the work should have been completed on October 12, but was not completed until November 15, 34 days thereafter, and the respondent deducted from the libellant’s bill $1,700, being liquidated damages stipulated in the contract at $50 per day for 34 days’ delay. The court held the change in the contract to have been of an immaterial nature, agreed to by both parties, and thereby as not affecting the time limit, saying that “libellant having agreed to make the change without requiring additional time, can not now urge it as an excuse for the delay.” It appears that the respondent was under obligation to furnish a windlass to be installed in the vessel, and did not furnish it until October 11, the day before the time limit for the completion of the work, and the installation of the windlass would require eight days’ time. The respondent in reply pointed out that the boiler to be connected with the windlass was not obtained by the libellant until some 10 days after the delivery of the windlass and therefore that its failure to deliver the windlass did not affect the situation. The court, however, said in reference to this contention that it was “based upon an assumption which it had no right to make. The respondent, seeking to enforce the damage clause in the contract, must show that it lived up to the contract itself. * * * It can not be said that if the libellant had received the windlass earlier it would not have made greater efforts to hasten the work. The respondent, seeking to enforce the contract, can not recover damages for delay which may have been occasioned by its own default.” It was therefore held that whilst this delay did not operate as a waiver of the time provision in the contract, it operated as an implied agreement extending the time sufficiently to permit the installation of the windlass. The court came to the conclusion in that case that the cause of the delay was a strike in the libellant’s yards, for which the respondent could not be held responsible, and consequently the libellant was charged with 27 days’ delay. Here, again, we have a case affecting the performance of a contract after its performance was begun by the contractor, but it is not an authority upon the question as to whether or not delay in the execution of the contract *374 can be used to defeat the terms of tbe contract after it is executed and performance begun.
In one of the cases relied upon in the majority opinion the case of McGowan v. American Tan Bark Co., 121 U. S., 575, 598, is cited to the proposition that where there has been delay in the approval of the contract the time of the delay may be added to the time fixed for performance, but that case does not appear to sustain that view.
The contract there provided that the work was to be completed within 60 days of the delivery of the boat, while it was not, in fact, delivered until after the 60 days had expired. When it was delivered the defendants proceeded without objection with the work, and it was said that the parties treated the contract as in full force except as to the time in which it was to be performed, and the work was done and the payments were made under the contract, as just stated, in time. This case did not, therefore, turn upon the question of adding a “ reasonable time ” to that fixed by the contract, but upon the fact that the time having expired, and the parties proceeding, it was assumed, in the absence of any other provision, that the undertaking would be completed within the time the original contract contemplated that it would be completed. This is made clear by the statement of the court: “ These views are in accordance with the rulings of this court in Phillips v. Seymour,” 91 U. S., 646, from which we have quoted above, to the effect that where time is of the essence of the contract it must be performed within the time stipulated. From the above analysis of them it seems that the cases cited do not sustain the majority view.
I think the authorities justify the conclusion that the claimant here can not be relieved from the cost of supervision and inspection under the extension of time agreed upon, and, further, that they justify the distinction attempted to be made that delay in the signing or execution of a contract can not be held to so affect the terms of a contract as to the time of its performance as to justify the adding of what the court may determine to be “ a reasonable time ” to that which the parties in their agreement have fixed.
*375 The court has found in this case that time was of the essence of the contracts. It also appears that the parties could and did agree upon an extension of time, and if there had been no such provision in the original contracts as that relative to an extension of time, and the parties had agreed upon an extension, that fact would have been evidence that they deemed time material. Wiswall v. McGowan, 2 Barb., 270.
A departure from the rule announced in the foregoing cases may lead to many difficulties in rendering uncertain contracts which parties have deliberately made. The ruling adds to the terms of the contracts one which the parties have not made; it eliminates by construction a provision fixing the time, while at the same time it declares that time is of the essence of the contracts; it assumes that the court will fix a reasonable time for the extension, which, of course, may vary with the circumstances of different cases. It therefore practically destroys the rule that where time is of the essence of a contract the party must perform in that time. And it goes further in practically eliminating the clause in the contracts providing for an extension and prescribing the terms upon which it will be granted, and thus treating, the action of the parties in providing for an extension upon certain terms as unusual and unnecessary. And its effect may go still further, in that it apparently “ turns loose ” the clause providing for liquidated damages in case of nonperformance within a stipulated time, though the parties have expressly stipulated for it, and it remits defendants to a proof of actual damages which often it may be impracticable to prove. Where a contract provides that the work shall be done within a time fixed, and if not done that the contractor shall pay liquidated damages, the term is clear; but to provide for liquidated damages unless the work be completed within a reasonable time is to leave the matter open to be settled by the exigencies and circumstances of each particular case. The certainty of the law and the freedom of parties to agree and have their agreements construed by the courts according to the intention of the parties is of graver importance than the relief of an individual claimant from *376 the effects of an improvident contract on his part can possibly be.
In Sun Printing and Publishing Ass’n v. Moore, 183 U. S., 642, the court, in an opinion by Mr. Justice White, goes fully into the question of the right of parties to stipulate as to liquidated damages, and on page 669 he uses this apposite language:
“ From a critical examination of all these cases and others that might be. referred to, it will be found that the business of the court, in construing this clause of the agreement, as in respect to every other part thereof, is to inquire after the meaning and intent of the parties; and when that is clearly ascertained from the terms and language used, it must be carried into effect. A court of law possesses no dispensing powers; it can not inquire whether the parties have acted wisely or rashly in respect to any stipulation that they may have thought proper to introduce into their agreements. If they are competent to contract within the prudential rules the law has fixed as to parties, and there has been no fraud, circumvention, or illegality in the case, the court is bound to enforce the agreement. Men may enter into improvident contracts where the advantage is Imowingly and strikingly against them; they may also expend their property upon idle or worthless objects, or give it away if they please without an equivalent, in spite of the powers or interference of the court; and it is difficult to see why they may not fix for themselves by agreement in advance a measure of compensation, however extravagant it may be, for a violation of their covenant (they surely may after it has accrued) without the intervention of a court or jury.”
For the above reasons I think the claimant should not recover the expense and cost of inspection and supervision.